1/TERRI F. LOVE, Judge.
New Orleans Public Belt (“NOPB”), third party defendant, appeals the district court’s denial of its Exception of Prematurity/Motion to Stay Proceedings Pending Arbitration. NOPB then filed an Emergency Interlocutory Appeal and/or Writ to this Court, which declined to exercise supervisory jurisdiction over the issue. NOPB took no further action and proceeded to trial on the merits. NOPB now comes before this Court, seeking review of the district court’s denial of its’ exception. For the reasons outlined below, we dismiss this appeal.
FACTS AND PROCEDURAL HISTORY
Robert Bodenheimer (“Bodenheimer”), an employee of NOPB, was injured in the course and scope of his employment on January 5, 1996. Bodenheimer was injured while operating a NOPB switch machine. CSX Transportation, Inc. (“CSX”) maintained the switch for NOPB under the “Tripartite Maintenance and Operation Agreement” of June 1,1993.
On December 23, 1996, Bodenheimer filed an action for damages against CSX and NOPB. On March 3, 1997, CSX filed a cross-claim seeking contractual indemnity against NOPB, and amended the cross claim on November 10, 2000. | gOn December 12, 2000, NOPB filed a “Dilatory Exception of Prematurity/Motion to Stay Proceedings Pending Arbitration.” NOPB argued that the binding arbitration agreement was contained in a separate contract between it and CSX, known as the “Track-age Rights Agreement”, of July 25, 1994 and that this contract was controlling in this action. A hearing on NOPB’s exception was conducted on March 8, 2001, at which the district court denied NOPB’s exception. On March 9, 2001, NOPB filed an Emergency Interlocutory Appeal and/or Writ to this Court seeking review of the district court’s ruling. On March 9, 2001, this Court denied NOPB’s emergency writ, declining to exercise supervisory jurisdiction. NOPB took no further action and proceeded to trial on the merits in the district court.
CSX settled with Bodenheimer prior to trial, but pursued it claim for indemnification against NOPB. NOPB now appeals the district court’s March 8, 2001 pretrial ruling.
DISCUSSION
This Court’s decision in Thomas v. Desire Community Housing Corp., 98-2097, p. 7 (La.App. 4 Cir. 7/19/00), 773 So.2d 755, is applicable to the case at bar, where we *79 discussed at length the procedure for preserving a claim of arbitration rights. In Thomas, the Thomas’ filed suit against Desire Community Housing Corporation and others, alleging breach of a construction contract. Defendants filed an exception of prematurity seeking arbitration pursuant to the contract. The trial court granted that exception and this Court denied plaintiffs’ writ application. Plaintiffs’ counsel then wrote defendants’ counsel concerning matters preliminary to arbitration. Defendants’ counsel responded, stating that they had a dispute over certain documents, plaintiffs’ claim had prescribed, and that if plaintiffs did not |3drop their suit, defendants would reconvene for malicious prosecution. No arbitration took place as a result of that correspondence and plaintiffs again filed suit. Thereafter defendants again filed an exception of prematurity for want of arbitration, which was overruled by the trial court. No appeal or writ application followed that ruling. Defendants filed an answer and reconventional demand. Discovery and other trial preparations occurred intermittently until trial. Defendants then requested a stay of proceedings in order to arbitrate the matter. The request was denied and judgment was rendered in favor of the plaintiffs.
In Thomas, on original hearing, this Court rejected plaintiffs’ argument that since defendants did not seek review of the order overruling the exception of prematurity, they could not now challenge the order. Thomas, 98-2097, p. 7, 773 So.2d at 759. This Court found that the trial court’s decision was not a final appealable judgment. Id. Further the Thomas Court held that while it may have been permissible for Desire to seek writs, it was referred to no legal authority and was not aware of any which required Desire to apply for writs. Id. On Rehearing, this Court found that decision to be in error. The Thomas Court stated in part:
We recognize that there is a strong public policy in Louisiana favoring the enforcement of arbitration clauses, (citing Cajun Elec. Power Co-op, Inc. v. Louisiana Power and Light, 324 So.2d 475 (La.App. 4 Cir.1975)). We also recognize that arbitration is a substitute for litigation and that its purpose is to settle disputes in a fast, inexpensive manner before a tribunal chosen by the parties. We believe that one who claims entitlement to arbitration cannot make a pro forma request for it, file a reconventional demand and then sit on his rights for six and a half years, participate in litigation and then after an adverse ruling cry “ ‘Kings X’, the judgment is invalid for want of arbitration.” That is the very antithesis of what arbitration is all about.
Thomas, 98-2097, p. 7. 773 So.2d at 759.
|4The Thomas Court stated that there was no Louisiana law directly on point but cited:
Once suit is filed, the party asserting the arbitration defense should file a motion to stay the court proceedings and to compel arbitration. This is the only way that a party may effectively stop a suit and institute arbitration proceedings. The court must stay the action once it finds that the dispute is referable to arbitration and no other impediments prevent the application of the arbitration clause. The mandatory character of the rule appears from the wording “shall be stayed” such as that in § 2(e) of the Uniform Arbitration Act. [In Louisiana, See R.S.9:4202] [A party must appeal a denial of the motion to stay or a motion to compel arbitration. If the party does not do so, and participates further in the litigation, the party will
*80 be deemed to have waived its right to arbitrate.] Domke, Comm. Arbitration § 19.07 (Rev. Ed.). (Emphasis added) (Internal citations omitted).
Thomas, 98-2097, p. 8, 773 So.2d at 759-760.
The Court in Thomas relied heavily on Ritzel Communications, Inc. v. Mid-American Cellular Telephone Co., 989 F.2d 966 (8th Cir.1993), for its analysis. The Court found that the facts in Ritzel were similar to those in Thomas and, accordingly, we find that they are applicable to the present case as well. In Ritzel, Mid-American had sold a wholly owned subsidiary to a group of investors known as the Goodwin group. Ritzel sued Mid-American for its fee. Subsequently the Goodwin group was added as third party defendants. The Goodwin group moved to dismiss the third party complaint or alternatively for a separate trial. Later the group filed a motion to stay litigation and to compel arbitration based on certain provisions of the stock purchase agreement. This district court denied the motion and the Goodwin group appealed. While the appeal was pending, the group continued to litigate in the district court. Specifically it answered the complaint, amended its counterclaim and participated in discovery. The trial lasted six days. All of this activity occurred before the appeal was argued.
| ¡¡The court found the Goodwin group had waived its right to seek arbitration:
In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitration should be resolved in favor of arbitration. Nevertheless, we will find waiver where the party claiming the right to arbitrate: 1) knew of an existing right to arbitrate; 2) acted inconsistently with that right; and 3) prejudiced the other party by these inconsistent acts. (Internal citations omitted).
Ritzel, 989 at 968-969.
The Ritzel court found that the Goodwin group knew of its arbitration rights because it had drafted the agreements at issue. Secondly, the court determined that the group had acted inconsistently with its known arbitration rights because it had invoked the litigation process by moving for dismissal or alternatively for a separate trial. Thirdly, the court went on to find that Mid-American suffered “obvious and substantial” prejudice by virtue of having to participate in trial. In addition, the court found it significant that the Goodwin group had failed to ask for a stay of the lower court proceedings pending appeal and that the group had not sought an expedited appeal:
Arbitration clauses in agreements are designed to resolve disputes without costly litigation. When a party appealing the denial of its arbitration rights ignores the available means to avoid wasteful litigation pending appeal, it is acting inconsistently with those rights. By failing to make the simple effort of requesting a stay in this court and by proceeding to trial on the merits in the district court, the Goodwin group defeated the whole purpose of the arbitration clause on which it claims to rely....
Ritzel, 989 at 970.
This Court in Thomas noted clear parallels to the Ritzel case.
Obviously, the defendants knew they had the right to arbitrate since they had successfully filed the exception in the first suit and had re-filed it in this case. When it was overruled the defendants had the right to seek writs to this Court and could have sought and interlocutory appeal based on irreparable injury. By failing to do anything to review the dis *81 trict court’s overruling of their exception of | fiprematurity and by subsequently filing a reconventional demand, taking part in trial preparation and participating in several days of trial, defendants acted inconsistently with their known right to arbitration. As to the third factor, prejudice to the opponent, this is as obvious and substantial here as it was in the Ritzel case. We find it of no moment that on the third day of trial defendants moved to stay the trial in order to arbitrate. The damage had already been done over the previous six and one-half years, including two full days of trial out of a total five trial days. (Internal citations omitted).
Thomas, 98-2097, p. 10. 773 So.2d at 760-761.
In Thomas the defendants did not seek review of the district court’s ruling on its exception for prematurity. In this case NOPB did file a writ application in this Court, but when we refused to exercise our supervisory jurisdiction, NOPB did not seek review in the Supreme Court. Following our ruling in Thomas, we find that NOPB’s actions constituted a waiver of its right to pursue the arbitration issue. It was imperative that NOPB appeal to the Supreme Court for relief when this Court declined to exercise its supervisory jurisdiction, in order to preserve its claim to arbitration. By not doing so, NOPB effectively waived its right to claim arbitration.
Analyzing this case by the three part test outlined in Ritzel, and relied upon by this Court in Thomas, we further find that NOPB waived the claim of arbitration since it asserted a right to arbitrate, but it acted inconsistently with that alleged right by not exhausting all of its remedies for appeal by not filing a writ with the Supreme Court after this Court declined to exercise jurisdiction, and prejudiced CSX by going through trial.
We find that NOPB waived its right to claim arbitration by not appealing the district court’s ruling to the Supreme Court. This was a crucial step that would have preserved NOPB’s right to claim arbitration.
17CONCLUSION
Since we find that NOPB has effectively waived its right to claim arbitration by its inaction, we pretermit discussion of NOPB’s remaining assignments of error that address the merits of the contractual agreements between CSX and NOPB, and dismiss its appeal.
APPEAL DISMISSED.